**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

ASHLEY EVANS                                                                                                   PLAINTIFF

v.                                          No. 4:16CV00628 JLH

NISSAN EXTENDED SERVICES NORTH
AMERICA, INC; FIFTH THIRD BANK;
and ASBURY AR NISS, LLC d/b/a
NORTH LITTLE ROCK NISSAN                                                                        DEFENDANTS

**OPINION AND ORDER**

This dispute arises from the purchase of a vehicle. Ashley Evans purchased a pre-owned Chevrolet Equinox from North Little Rock Nissan. Evans alleges that the vehicle was defective at the time of the sale. She also alleges that when the vehicle malfunctioned, the service department at North Little Rock Nissan falsely told her that she was required to take the vehicle to a Chevrolet dealership for inspection, which she did. In her amended complaint, she alleges claims for violation of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 *et seq*., the Uniform Commercial Code, Ark. Code Ann. § 4-1-101 *et seq*., and the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*., as well as a claim for interference with contractual relationships. For relief, she seeks damages, attorneys' fees and costs, rescission and restitution. A motion to compel arbitration of Evans's claims has been filed by the dealership and its assignee, Fifth Third Bank. For the following reasons, the motion is granted.

**I.**

Evans and the dealership entered into a retail purchase agreement and retail installment contract, pursuant to which Evans promised to make 75 monthly payments on the vehicle of

$359.69. The dealership assigned its interest in the retail installment contract to Fifth Third Bank.[1] As part of the retail purchase agreement, Evans purchased from Nissan Extended Services North America, Inc. a vehicle service contract.[2] North Little Rock Nissan retained a portion of what Evans paid for the service contract. Evans signed an arbitration agreement when she purchased the vehicle. The arbitration agreement, entitled "WAIVER OF PURCHASER'S RIGHT TO SUE," provides:

> By entering into this Agreement to Arbitrate ("Agreement"), Customer(s) and Dealership, including any Dealership employees, agents, successors or assigns (collectively referred to as "the Parties") agree, except as otherwise provided in this Agreement, that either you or we may elect to settle by binding arbitration any dispute between them based in whole or in part on contract, tort, statute, or other equitable relief, including but not limited to any dispute related to: (1) the Vehicle and any products and services purchased in conjunction therewith; (2) the negotiation of and terms of the Retail Purchase Agreement, the Retail Installment Sales Contract or the Lease Contract, and any other documents that are part of the transaction; (3) the application for and terms of financing for the transaction; and/or (4) any question as to whether a dispute may be arbitrated (including the interpretation and scope of this Agreement to Arbitrate).
> \* \* \*
> Each party shall be responsible for its own attorney, expert and other fees.
> \* \* \*
> **Nothing in this Agreement shall be interpreted as limiting or precluding the arbitrator(s) from awarding monetary damages or any other relief provided for by law** . . . **The Parties agree, however, that by entering into this Agreement, they are waiving their right to sue, their right to a jury trial, and their right to bring or participate in any class action** . . . .

Document #15-1.

---

[1] Evans does not dispute that as an assignee of North Little Rock Nissan, Fifth Third Bank may enforce the arbitration agreement.

[2] Evans's only claim against Nissan Extended Services North America is for equitable relief in the form of restitution and rescission of the vehicle service contract. Evans alleges that she purchased the service contract in reliance on misrepresentations by the dealership. Document #10 at 18, ¶74.

## II.

The Court first must determine whether the arbitration agreement is valid and enforceable under Arkansas law, and then, if the agreement is valid and enforceable, whether this dispute falls within its terms. *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004). Arbitration agreements are favored under both federal and Arkansas law. *See E-Z Cash Advance, Inc. v. Harris*, 347 Ark. 132, 138, 60 S.W.3d 436, 440 (2001). The Arkansas Supreme Court "has held that arbitration is simply a matter of contract between the parties." *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 141, 147 S.W.3d 681, 684 (2004).

Evans does not deny that all of the elements of a contract under Arkansas law are present. *See* Document #19. Rather, Evans argues that the Court should not enforce the agreement because it precludes recovery of statutory attorneys' fees and costs, which is unconscionable. *Id*. at 7. "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652, 1656, 134 L. Ed. 2d 902 (1996). Under Arkansas law, the burden of proof that a contract is unconscionable rests on the party claiming it is unconscionable. *GGNSC Holdings, LLC v. Lamb By and Through Williams*, 2016 Ark. 101, 14, 487 S.W.3d 348, 357. "An act is unconscionable if it affronts the sense of justice, decency, and reasonableness." *Gulfco of Louisiana, Inc. v. Brantley*, 2013 Ark. 367, 9, 430 S.W.3d 7, 13. The Court considers the totality of the circumstances surrounding the negotiation and execution of the agreement, particularly the disparity in bargaining power and the aggrieved party's understanding of the agreement. *Id*. Because attorneys' fees are often contingent on a statutory remedy linked to specific statutory rights,

"it is possible that a restriction on remedies in an arbitration agreement may so limit recovery that the agreement is unconscionable." *Faber*, 367 F.3d at 1054.

The parts of the arbitration agreement pertinent to Evans's argument provide:

> The Party initiating the arbitration proceedings must pay the cost of the initial filing fees, but the Dealership will, upon Customer's request, pay up to a maximum of $1,500 toward any portion of the Customer's filing, administration, service or case management fee, and arbitrator or hearing fee that exceeds the amount he/she would be required to pay if the claim were filed before a state or federal court of law having proper jurisdiction over the proceeding. *Each party shall be responsible for its own attorney, expert and other fees*.
>
> &#42; &#42; &#42;
>
> **Nothing in this agreement shall be interpreted as limiting or precluding the arbitrator(s) from awarding monetary damages or any other relief provided by law.**

Document #15-1 (italics added). Evans interprets the portion of the agreement emphasized in italics above to preclude an award of attorneys' fees and costs available to her under the Arkansas Deceptive Trade Practices Act and the Magnusson-Moss Warranty Act, should her claims succeed. Document #19 at 7. The defendants, in contrast, interpret the italicized portion as a mere recitation of the American Rule. "Under the longstanding American Rule, parties are required to pay their own attorney's fees unless an award of fees is authorized by statute." *Kelly v. Golden*, 352 F.3d 344, 352 (8th Cir. 2003). The defendants point to the bold part of the agreement, which states that nothing in the agreement should be interpreted as precluding any relief provided by law, and they concede that Evans will be entitled to recover attorneys' fees if she prevails under a statute that authorizes such an award. Document #22 at 2-3.

The Eighth Circuit considered whether a provision in an arbitration clause requiring each party to pay their own attorneys' fees was unconscionable under Iowa law:

> It is possible that a restriction on remedies in an arbitration agreement may so limit recovery that the agreement is unconscionable and invalid under state law. Not all

>limitations on remedy will make the agreement unconscionable, however. The arbitrator is particularly well-suited to interpret the agreement and determine the appropriate extent of its remedial authority. The arbitrator has the authority to enforce substantive statutory rights even if those rights are in conflict with contractual limitations in the agreement that would otherwise apply.

*Faber*, 367 F.3d at 1055 (internal citations & quotations omitted). The court held that merely requiring the parties to pay their own attorney's fees was not unconscionable under Iowa law and concluded that the arbitrator should be the one to decide whether an appropriate remedy may include attorneys' fees. *Id.*

Here, as the defendants concede, the arbitration agreement does not preclude the arbitrator from awarding attorneys' fees. Rather, it recites the American Rule that parties must then bear their own attorneys' fees but then states that nothing in the agreement bars the arbitrator from awarding any relief provided by law, which could include attorneys' fees. Thus, if Evans is entitled to receive attorneys' fees under a statute, the arbitration agreement would not preclude such an award.[3] Therefore, Evans provides the Court with no grounds upon which to find that any provision of the arbitration agreement is unconscionable.

## III.

Evans argues that even if the arbitration agreement is not unconscionable, her claim against North Little Rock Nissan for tortious interference with the service contract does not fall within the terms of the agreement. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quotation

---

[3] If the arbitration agreement precluded an award of attorneys' fees, that provision, if unconscionable, could be severed pursuant to Ark. Code Ann. § 4-2-302 and the remainder of the agreement enforced. *Faber*, 367 F.3d at 1054.

omitted). "The question whether the parties have submitted a particular [type of controversy] to an arbitration, i.e., the '*question of arbitrability*,' is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (quoting *AT&T Techs., Inc.*, 475 U.S. at 649, 106 S. Ct. at 1415). Who has the primary power to decide arbitrability hinges on what the parties agreed about who has the primary power to decide arbitrability. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995). Here, the parties have clearly revealed an intent to submit to the arbitrator the issue of whether a particular claim is arbitrable:

> By entering into this Agreement to Arbitrate ("Agreement"), Customer(s) and Dealership, including any Dealership employees, agents, successors or assigns (collectively referred to as "the Parties") agree . . . that either you or we may elect to settle by binding arbitration any dispute between them based in whole or in part on contract, tort, statute, or other equitable relief, including but not limited to any dispute related to . . . any question as to whether a dispute may be arbitrated (including the interpretation and scope of this Agreement to Arbitrate).

Document #15-1. Because the arbitration agreement includes an express statement of the parties' intent to arbitrate questions about the scope of the agreement, the Court must submit to arbitration the parties' dispute as to whether Evans's claim for tortious interference with the service contract is barred from arbitration because it is outside the scope of the agreement. *See Express Scripts v. Aegon Direct Mktg. Serv.*, 516 F.3d 695, 701 (8th Cir. 2008).

Evans also maintains that the service contract does not disclose an arbitration agreement as one of its terms as required by the Magnusson-Moss Warranty Act. Document #19 at 9. That Act requires that a service contract "full, clearly, and conspicuously disclose its terms and conditions in simple and readily understood language." 15 U.S.C. § 2306(b). Here, the arbitration agreement was fully, clearly, and conspicuously disclosed, and its terms are simple and readily understood.

**CONCLUSION**

The motion to compel arbitration is GRANTED. Document #15. This action is administratively terminated pending the outcome of arbitration. The parties are directed to submit claims of Ashley Evans against North Little Rock Nissan and Fifth Third Bank to arbitration in accordance with the terms of the agreement. Any party may move to reopen this action within thirty (30) days after the arbitrator issues a final decision.[4]

IT IS SO ORDERED this 18th day of November, 2016.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[4] Nissan Extended Services North America, Inc., is not a party to the arbitration agreement and has not moved to compel Evans to arbitrate her claims against it. The parties have not briefed the issue of what effect arbitration of Evans's claims against the dealership and the bank will have on the claims against Nissan Extended Services. The Court expresses no opinion as to whether that entity may participate in the arbitration or be bound by it. The provision for reopening the case after the arbitration includes but is not limited to reopening Evans's claims against Nissan Extended Services, if necessary or appropriate, after conclusion of the arbitration.